## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JAMAAL KING,**                **CASE NO. 4:19-cv-00488-RH -MJF**

       **Plaintiff,**

**v.**

**FLORIDA DEPARTMENT OF
CORRECTIONS; CORIZON
HEALTH INC.; and CENTURION
OF FLORIDA, LLC,**

       **Defendants.**
_____/

## <u>SECOND AMENDED COMPLAINT</u>

Plaintiff, JAMAAL KING, hereby sues Defendants, FLORIDA

DEPARTMENT OF CORRECTIONS, CORIZON HEALTH INC. and

CENTURION OF FLORIDA, LLC, alleges:

### NATURE OF THE ACTION

1.     This is an action brought under the 29 U.S.C. §794, 42 U.S.C.

§12131, *et seq*., U.S.C. Const. Amend. 8; 42 U.S.C.A. § 1983., and the common

law of Florida.

2.     This action was initially brought in the Circuit Court for the Second

Judicial Circuit, in and for Leon County, Florida, and then removed to this court.

## PARTIES

3.      At all times pertinent hereto, Plaintiff, JAMAAL KING, has been a

resident of Florida, and he is *sui juris*.

4.      At all times pertinent hereto, Defendant, FLORIDA DEPARTMENT

OF CORRECTIONS ("DOC"), has been organized and existing under the laws of

Florida. At all times pertinent hereto, Defendant received and utilized in

conducting its functions as provided by law federal financial assistance, such

assistance received for the purposes of assisting some or all of the programs and

activities of Defendant. On information and belief, the funds received constituting

such federal financial assistance were deposited into a general fund or account

managed by or on behalf of Defendant.

5.      During part of the time relevant to this action from the date of

Plaintiff's incarceration in March 2014, through May 31, 2016, Defendant,

CORIZON HEALTH INC. was providing medical services under contract with

Defendant DOC.  The medical staff at all of Defendant DOC facilities in which

Plaintiff was housed from March 2014 through May 31, 2016 were employees of

Defendant CORIZON.

6.      During part of the time relevant to this action from April 2016 until

Plaintiff transferred to a GEO facility, i.e., Blackwater CI, on November 8, 2017,

Defendant, CENTURION OF FLORIDA, LLC, was providing medical services to

2

inmates within DOC under contract with Defendant DOC.  As of April 2016,

Defendant Centurion continued to provide medical services for DOC until at least

the time Plaintiff transferred to Blackwater. The medical staff at all of Defendant

DOC's facilities in which Plaintiff was housed from April 2016 through November

8, 2017 were employees of Defendant CENTURION.

## CONDITIONS PRECEDENT

7.      All conditions precedent to bringing this action have been satisfied or

waived.

## BACKGROUND FACTS

8.      On or about March 10, 2014, upon intake and examination at the DOC

Reception and Medical Center (RMC), staff noted Plaintiff was legally blind in his

right eye with vision in that eye being 20/400. His poor eyesight was due to a

cataract that was believed to have been operable.  During this intake, Plaintiff also

had a seizure lasting approximately three minutes.  Staff at RMC witnessed the

seizure.

9.      Defendant Corizon was the medical provider for DOC under contract

from the time that Plaintiff entered a DOC facility until May 31, 2016.

10.      On or about March 13, 2014, while still at RMC, Plaintiff received a

low bunk pass due to his history of seizures.

11.     Due to Plaintiff's history of seizures, when incarcerated, it was imperative that he be housed on a lower rather than upper bunk, and for that reason, he requested a lower bunk "pass" on a repeated basis starting as early as March 2014. Thus, Defendants DOC and Corizon had been continuously made aware of Plaintiff's medical conditions, including his history of seizures, since that time.

12.     On or about May 6, 2015, Plaintiff was transferred to Liberty Correctional  Institute ("LCI"). He arrived at LCI with a low bunk pass.

13.     On or about May 29, 2014, Plaintiff had a second seizure and was found on the floor of his cell.  He was noted to be disoriented as to time, place and situation.  He had a wound above his right eyebrow.  There was no neurologic assessment noted.  Plaintiff was given a low bunk pass.

14.     On or about July 5, 2014, Plaintiff had a third seizure.

15.     On or about July 9, 2014, Plaintiff had a Cataract resection and implantation of Intra-ocular lens into the right eye.  Plaintiff's recovery was ongoing at the time of the fall discussed below on June 10, 2015.

16.     On or about December 24, 2014, Plaintiff received another low bunk pass.

17.     On or about January 25, 2015, Plaintiff had a fourth seizure.

4

18.     On June 10, 2015, while he was an inmate within Defendant DOC at LCI, Plaintiff was assigned an upper bunk, despite having a lower bunk pass and its knowledge of Plaintiff's need for a low bunk pass due to his seizures.  DOC has stated multiple times in records pertaining to Plaintiff that it does not have to honor a bunk pass written by medical employees and that the bunk pass certificate from a medical provider, Corizon in this case, is only a recommendation, not mandatory. Alternatively, Corizon was responsible for preparing and submitting to DOC bunk passes for inmates like Plaintiff and may not have reissued a low bunk pass that would have covered June 10, 2015, despite Plaintiff's request for a low bunk pass and Corizon's knowledge of his need for same.

19.     On June 10, 2015, Plaintiff had a fifth seizure and fell from his upper bunk, hitting a footlocker that was partially open before landing on the concrete floor. In the fall, Plaintiff suffered facial lacerations, facial trauma, a severe open head wound, head and brain trauma, an orbital fracture of the right eye, almost certainly a concussion, and a sprained or broken ankle.

20.     Plaintiff would not have sustained injuries had Defendants, DOC and Corizon, accommodated his disabilities in the first instance, including his request for a lower bunk, due to his history of seizures.

21.     After the June 10, 2015 seizure, fall and severe injuries, Plaintiff was treated in the LCI infirmary by CORIZON staff, then transported to Calhoun

Liberty Hospital, and shortly thereafter was placed in an ambulance to be transported again to Tallahassee Memorial Hospital ("TMH"), where he remained for approximately two days.

22.     When Plaintiff was returned to Lake Butler RMC from TMH, shockingly, he was once again assigned to an upper bunk, such assignment despite his history of seizures, and despite his recent fall and injuries.

23.     On or about July 2, 2015, Plaintiff had a sixth seizure.

24.     On or about July 4, 2015, Plaintiff had a seventh seizure.

25.     On July 7, 2015, Plaintiff underwent surgery at Lake Butler RMC for his orbital fracture sustained on June 10, 2015. Plaintiff was determined to be blind in his right eye following this procedure.

26.     On or about July 20, 2015 Plaintiff wrote an informal grievance stating that he had a low bunk pass but had been moved from a low bunk to an upper bunk.  Plaintiff expressed concern given his recent seizure and injury.

27.     On or about July 23, 2015, Plaintiff wrote an informal grievance asking why he was not in a low bunk in spite of his seizure history.

28.     On or about July 28, 2015, DOC employee J. Moore, Grievance/ADA Coordinator at RMC, responded to Plaintiff stating "remember a pass is just a recommendation.  Security can move you when they want too [sic]."

29.     On or about July 29, 2015, J. Moore stated that his pass was expiring the next day and told him a low bunk pass from medical is a "recommendation."

30.     On or about August 3, 2015, J Moore responded that even though Plaintiff had a medical low bunk pass, it was only considered as a "recommendation."  Moore further wrote "Security does not have to put you in a low bunk if there is not one."

31.     On or about September 8, 2015, inexplicably, Plaintiff was moved back to LCI into a high bunk.

32.     On or about September 9. 2015 Plaintiff had an eighth seizure.

33.     After these seizures; he was not offered any medical diagnosis, tests or medication in connection with these additional seizures, and again shockingly, he was yet again denied a lower bunk.

34.     After Plaintiff's return to LCI he repeatedly requested a lower bunk because of his seizure condition, but Defendant failed to accommodate his condition and honor his requests.

35.     Further, in connection with injuries sustained in his earlier fall, described above, Plaintiff was denied any follow-up care after having stitches other than the care he received at Lake Butler RMC.

36.     Plaintiff did not receive any tests for concussion or to determine the cause of his seizures.

37.     The medication prescribed to Plaintiff for the seizures, Depakote, did not reduce the frequency of his seizures.

38.     Plaintiff also did not receive any blood tests, which tests are standard safety requirement for patients prescribed Depakote.

39.     On or about October 26, 2015, Plaintiff had a ninth seizure.

40.     On or about October 28, 2015, Plaintiff had a tenth seizure.

41.     On or about December 17, 2015, Plaintiff had an eleventh seizure.

42.     On or about February 17, 2016, Plaintiff had a twelfth seizure.

43.     On or about March 18, 2016, Plaintiff had a thirteenth and fourteenth seizure.

44.     On or about April 16, 2016, Plaintiff had a fifteenth seizure. By this time, Defendant Centurion was contracting with Defendant DOC as there was an overlap of services between Corizon and Centurion for medical care in DOC facilities in which Plaintiff was housed from April through May 31, 2016.

45.     On or about April 17, 2016, Plaintiff had a sixteenth seizure.

46.     On or about June 4, 2016, Plaintiff had a seventeenth seizure.

47.     On or about June 5, 2016, Plaintiff had an eighteenth seizure.

48.     On or about August 8, 2016, Plaintiff had his nineteenth and twentieth seizure.

49.     On or about October 2, 2016, Plaintiff had a twenty-first seizure.

50.     On or about November 22, 2016, Plaintiff had his twenty-second seizure.

51.     On or about December 9, 2016, Plaintiff was noted to be having seizures every one or two minutes.

52.     On or about February 25, 2017, Plaintiff had his twenty-third seizure.  Still no tests were conducted to determine the proper medication for Plaintiff that would not make him ill nor the cause of his seizures.

53.     In March 2017, Plaintiff was finally provided a lower bunk at LCI.

54.     In mid-June 2017, Plaintiff began experiencing pain in his left arm and shoulder, which pain eventually extended all the way down the left side of his body to his hip.

55.     This pain was of such a severity that Plaintiff was not able to sleep or lay on that side.

56.     When Plaintiff went to Defendant Centurion's medical station to report this pain, he was told nothing was wrong, provided ibuprofen, and sent back to his dorm.  Defendant did not further test Plaintiff and delayed in obtaining

and/or providing proper medical attention to Plaintiff in light of his severe

symptoms.

57.     As the ibuprofen did not alleviate Plaintiff's condition, he returned to

Defendant Centurion's medical location a second time. On this second occasion,

Defendant's medical staff decided to keep him overnight.

58.     Around this time, in mid to late-June 2017, Plaintiff began to

experience increased pain in the lower abdomen, and observed his urine to be of an

abnormally dark color. Upon bringing those conditions to the attention of

Defendant Centurion's medical staff, Plaintiff was told that his brown urine

evidenced blood coming from his kidneys.

59.     On June 24, 2017, Plaintiff was taken to TMH and remained in

TMH's intensive care unit ("ICU").  Tests were thereafter conducted, and it was

ultimately determined that Plaintiff had acute kidney failure, and that he was

dehydrated.

60.     He was released from TMH during the first week of July 2017.  After

his release from TMH and return to LCI, he spent two days in the medical unit.

61.      Thereafter, in approximately October 2017, Plaintiff was confined by

Defendant DOC to a high-security dorm at LCI. Plaintiff had never before been

confined in a high-security dorm, and did not understand the reason for such

change. Defendant DOC refused to provide Plaintiff with a reason when he requested one.

62.     In that circumstance, Plaintiff was placed in high security confinement at LCI for approximately two weeks based on contrived allegations relating to an incident with which Plaintiff had no involvement whatsoever.

63.     Furthermore, Plaintiff was unjustly "sentenced" by Defendant DOC—with no due process--to an extra 30-35 days of incarceration based on its false accusations against him relating to this incident.

64.     Plaintiff was then transferred to another location of Defendant DOC where he was also kept in confinement; it was not until his subsequent transfer to Blackwater Correctional Institute in November 2017 that Plaintiff was returned to the general prisoner population.

65.     From the time he was first placed in confinement at LCI in or around October, 2017 through the time he was transferred and released back to normal status in November 2017, he was not able to speak with his family members or any other outsiders, which only caused increased suffering for him and for his family.

66.     When transferred to BCI, Plaintiff finally received further medical care regarding his loss of vision due to the June 2015 event described above.

67.     Specifically, Plaintiff was x-rayed by an optometrist or ophthalmologist at BCI, who observed blood behind his left eye, i.e., behind the eye that Plaintiff is not blind in.

68.     This optometrist or ophthalmologist also indicated that Plaintiff might have a chance of regaining vision in his blind eye if he undergoes certain treatment.  Plaintiff has still not had that treatment.

69.     Thus, since approximately June 2015, Plaintiff has suffered permanent and ongoing physical injury as well as physical and emotional pain and suffering, all as a result of Defendants' refusal to accommodate his disability and refusal to provide medical care.

70.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendants should be made to pay said fee, along with expenses incurred in prosecuting this action, under applicable law.

### COUNT I-COMMON LAW NEGLIGENT HIRING
### (against DEFENDANT DOC)

71.     Paragraphs 1-69 above are realleged and incorporated.

72.     This count sets forth a claim for common law negligent hiring.

73.     The actions of Defendant complained of in this count were taken in the performance of "operational" functions, i.e., functions that are not necessary to

or inherent in policymaking or planning, and which merely reflect secondary decisions as to how existing policies or plans will be implemented.

74.    The duties of care owed by Defendant to Plaintiff included duties to independently vet and investigate prior to hire its employees/agents involved in supervision of detainees and in the determination of their need for medical care, and/or involved in the supervision of other officers who supervise detainees and determined their medical needs, and to confirm their fitness for employment in their roles, and in the context of unfitness not to hire or contract with such employees/agents. Plaintiff was in a foreseeable zone of risk, and this duty of care arose.

75.    On information and belief, prior to their employment, Defendant breached its duty of care to Plaintiff by negligently failing to independently vet and investigate its employees/agents involved in inmate supervision and medical care determination, and/or by negligently failing to independently vet its employees/agents involved in the supervision of other officers who supervise inmates and determine medical care and needs for bunk assignments based on the employee's physical and/or mental health needs, and in negligently failing to confirm their fitness for employment in such roles. Had Defendant conducted independent investigations prior to such hirings, it would have known that certain

of its employees/ agents, on information and belief, had committed similar acts in the past, or were otherwise unfit to be hired.

76.    Defendant had a legal duty and responsibility to learn the pertinent facts concerning these candidates' character and fitness for duty, and its obtaining the necessary information would not have created undue hardship on it.

77.    Defendant breached its duty to hire employees who were fit for the duties they performed.

78.    As a direct and proximate result of the unlawful acts and omissions of Defendant, set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and are likely to continue into the future.

## COUNT II-COMMON LAW NEGLIGENT RETENTION
### (against Defendant DOC)

79.    Paragraphs 1-69 above are re-alleged and incorporated.

80.    This count sets forth a claim for common law negligent retention.

81.    The actions of Defendant complained of in this count were taken in the performance of "operational" functions, i.e., functions that are not necessary to

or inherent in policymaking or planning, and which merely reflect secondary decisions as to how existing policies or plans will be implemented.

82.     The duties of care owed by Defendant to Plaintiff included the duty to monitor the actions, inactions, and overall performance of its employees/agents subsequent to hire, to make itself aware of such employees'/ agents' fitness or unfitness to act properly under the law, without violating the rights of persons such as Plaintiff, and in the context of unfitness take remedial actions, including but not limited to discharge.

83.     Plaintiff was in a foreseeable zone of risk, and these duties of care arose.

84.     On information and belief, Defendant breached its duty of care to Plaintiff by negligently failing to monitor the actions, inactions, and overall performance of its employees/agents, by its negligent failure to make itself aware of the fitness or unfitness of such employees/agents to act properly under the law, without violating the rights of persons such as Plaintiff, and/or by its negligent failure to take remedial actions, including but not limited to discharge, when it was aware or should have been aware of such employees'/agents' unfitness, and such employees and/or agents then acted in connection with Plaintiff.

85.     As a direct and proximate result of the unlawful acts and omissions of Defendant, set forth in part above, Plaintiff has been damaged, which damages

include physical pain, mental anguish, pain and suffering, bodily injury, loss of

capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation,

loss of employment opportunities, lost wages, and loss of other emoluments. These

damages have occurred in the past, are occurring at present, and are likely to

continue into the future. Plaintiff is also entitled to equitable/injunctive relief under

this count.

### COUNT III-COMMON LAW NEGLIGENT TRAINING
### (against Defendant DOC)

86.    Paragraphs 1-69 above are re-alleged and incorporated.

87.    This count sets forth a claim for common law negligent training.

88.    The actions of Defendant complained of in this count were taken in

the performance of "operational" functions, i.e., functions that are not necessary to

or inherent in policymaking or planning, and which merely reflect secondary

decisions as to how existing policies or plans will be implemented.

89.    The duties of care owed by Defendant to Plaintiff included the duty to

properly train its employees/agents, and specifically to implement and operate

training programs so as to train employees/agents in connection with the

supervision of detainees and with the determination of detainees' needs for medical

care and needs for bunk assignments based on the employee's physical and/or

mental health needs, and/or with the supervision of other officers who in turn

16

supervise detainees and determine detainee medical care needs. Plaintiff was in a foreseeable zone of risk, and this duty of care arose.

90.     On information and belief, Defendant breached its duty of care to Plaintiff by negligently implementing or operating its training programs with regard to its employees/agents involved in detainee supervision and medical care determination, and/or involved in the supervision of other officers who in turn supervise detainees and determine medical care, and/or by delivering no training at all to such employees/agents, who then acted in connection with Plaintiff.

91.     As a direct and proximate result of the unlawful acts and omissions of Defendant, set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and are likely to continue into the future.

## COUNT IV-COMMON LAW NEGLIGENT SUPERVISION
### (Against Defendant DOC)

92.     Paragraphs 1-69 above are re-alleged and incorporated.

93.     This count sets forth a claim for common law negligent supervision.

94.     The actions of Defendant complained of in this count were taken in the performance of "operational" functions, i.e., functions that are not necessary to

or inherent in policymaking or planning, and which merely reflect secondary

decisions as to how existing policies or plans will be implemented.

95.     The duties of care owed by Defendant to Plaintiff included the duty to

properly supervise its employees/agents, and specifically to observe and monitor

the actions, inactions, and overall performance of its employees/agents in

functioning in connection with detainee supervision and medical care

determination and/or in connection with the supervision of other employees who

supervise detainees and determine medical care, to make themselves aware of their

employees'/agents' professional difficulties and the fitness or unfitness of such

employees/agents to act properly under the law, without violating the rights of

persons such as Plaintiff, and in the context of difficulties or unfitness to take

remedial actions, including but not limited to investigation, instruction, and

reassignment. Plaintiff was in a foreseeable zone of risk, and this duty of care

arose.

96.     On information and belief, Defendant breached its duty of care to

Plaintiff by negligently failing to monitor the actions, inactions, and overall

performance of its employees/agents in functioning in connection with detainee

supervision and medical care provision, and/or functioning in connection with the

supervision of other employees who supervise detainees and determine medical

care and needs for bunk assignments based on the employee's physical and/or

mental health needs, by its negligent failure to make itself aware of the difficulties and fitness or unfitness of such employees/agents to act properly under the law, without violating the rights of persons such as Plaintiff, and/or by its negligent failure to take remedial actions, including but not limited to investigation, instruction, and reassignment, when it was aware or should have been aware of such employees'/ agents' difficulties and unfitness, and such employees and agents then acted in connection with Plaintiff.

97.     As a direct and proximate result of the unlawful acts and omissions of Defendant, set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in past, are occurring at present and will certainly occur in the future.

## COUNT V-COMMON LAW NEGLIGENCE
### (Against Defendant DOC)

98.     Paragraphs 1-69 above are re-alleged and incorporated.

99.     This count sets forth a claim for common law negligence, and is based on duties that arose during Plaintiff's detention, neglect thereof, and resulting injuries. This count is pled in the alternative and for purposes of this count, at all

pertinent times, some or all of Defendant's employees were acting within the scope of their employment.

100.   Defendant knew or should have known that Plaintiff was within a zone of risk related to his contact with its agents/employees.

101.   Defendant owed a duty of care to Plaintiff due to Plaintiff being sufficiently restrained of his liberty and freedom to leave, and also based on Plaintiff's medical conditions in combination with his being in the custody of Defendant.

102.   Once Plaintiff was retrained of his liberty, and because he was forced to rely on the services provided by Defendant and decisions made about his bunk assignments, including his physical protection and also including determinations as to entitlement to medical services followed by the provision or failure of provision of such medical services, he was in a foreseeable zone of risk, and a duty of care arose. Alternatively, because of the nature of the restraint and the custodial relationship between Plaintiff and Defendant, and also based on Plaintiff's medical conditions, Defendant had a special relationship with him and, consequently, a duty of care was attendant thereto.

103.   Defendant breached its duty of care to Plaintiff and/or its duties to ensure that Plaintiff was properly assigned to a low bunk in light of his medical

condition and to ensure that Plaintiff received medical care, particularly in light of the circumstances here, specifically including Plaintiff's medical condition.

104.   The proximate cause of Plaintiff's injuries, and also for the exacerbation of Plaintiff's injuries, was Defendant's negligence set forth above, and therefore such negligence was the legal cause of Plaintiff's injuries.

105.   The common law negligence subject of this count is ordinary negligence in the performance or failure of performance of custodial duties devolving upon Defendant, and not negligence or vicarious liability for negligence in the provision of professional medical services. Therefore, the pertinent standard of care is that which applies to ordinary actions of non-medical professionals, rather than that which applies to medical professionals.

106.   No medical or professional expertise was required on the part of Defendant's employees in order to be aware of Plaintiff's severe medical conditions, and his need for medical access and services. Thus, Defendant's knowledge of Plaintiff's conditions and needs was obtained, in whole or in part, through non-medical employees/agents.

107.   The actions of Defendant, and specifically those actions complained of herein, were taken in the performance of "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

108.   As a direct and proximate result of the above unlawful acts and omissions of Defendant, Plaintiff sustained economic damages, including lost income, sustained emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, and is therefore entitled to compensatory damages. These damages occurred in the past, are occurring at present, and are likely to continue into the future.

## COUNT VI-COMMON LAW NEGLIGENT TRAINING
### (Against Defendant CORIZON)

109.   Paragraphs 1-45, 69 above are re-alleged and incorporated.

110.   This count sets forth a claim for common law negligent training.

111.   The duties of care owed by Defendant to Plaintiff included the duty to properly train its employees/agents, and specifically to implement and operate training programs so as to train employees/agents in connection with the supervision of detainees and with the determination of detainees' needs for medical care, needs for bunk assignments based on the employee's physical and/or mental health needs and/or with the supervision of other officers who in turn supervise detainees and determine detainee medical care needs and bunk assignments. Plaintiff was in a foreseeable zone of risk, and this duty of care arose.

112.   On information and belief, Defendant breached its duty of care to Plaintiff by negligently implementing or operating its training programs with

regard to its employees/agents involved in detainee supervision and medical care

determination and regarding inmates' needs for bunk assignments based on the

employee's physical and/or mental health needs, and/or involved in the supervision

of other officers who in turn supervise detainees and determine medical care,

and/or by delivering no training at all to such employees/agents, who then acted in

connection with Plaintiff.

113.   As a direct and proximate result of the unlawful acts and omissions of

Defendant, set forth in part above, Plaintiff has been damaged, which damages

include physical pain, mental anguish, pain and suffering, bodily injury, loss of

capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation,

loss of employment opportunities, lost wages, and loss of other emoluments. These

damages have occurred in the past, are continuing at present, and are likely to

continue into the future. Plaintiff is also entitled to equitable/injunctive relief under

this count.

### COUNT VII-COMMON LAW SUPERVISION
### (Against Defendant CORIZON)

114.   Paragraphs 1-45, 69 above are re-alleged and incorporated.

115.   This count sets forth a claim for common law negligent supervision.

116.   The duties of care owed by Defendant to Plaintiff included the duty to

properly supervise its employees/agents, and specifically to observe and monitor

the actions, inactions, and overall performance of its employees/agents in

23

functioning in connection with detainee supervision and medical care

determination and needs for bunk assignments based on the employee's physical

and/or mental health needs and/or in connection with the supervision of other

employees who supervise detainees and determine medical care, to make

themselves aware of their employees'/agents' professional difficulties and the

fitness or unfitness of such employees/agents to act properly under the law, without

violating the rights of persons such as Plaintiff, and in the context of difficulties or

unfitness to take remedial actions, including but not limited to investigation,

instruction, and reassignment. Plaintiff was in a foreseeable zone of risk, and this

duty of care arose.

117.   On information and belief, Defendant breached its duty of care to

Plaintiff by negligently failing to monitor the actions, inactions, and overall

performance of its employees/agents in functioning in connection with detainee

supervision, assignments of bunks to disabled inmates, and medical care provision,

and/or functioning in connection with the supervision of other employees who

supervise detainees and determine medical care, by its negligent failure to make

itself aware of the difficulties and fitness or unfitness of such employees/agents to

act properly under the law, without violating the rights of persons such as Plaintiff,

and/or by its negligent failure to take remedial actions, including but not limited to

investigation, instruction, and reassignment, when it was aware or should have

24

been aware of such employees'/ agents' difficulties and unfitness, and such employees and agents then acted in connection with Plaintiff.

118.   As a direct and proximate result of the unlawful acts and omissions of Defendant, set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future. Plaintiff is also entitled to equitable/ injunctive relief under this count.

## COUNT VIII-COMMON LAW NEGLIGENCE
### (against Defendant Corizon)

119.   Paragraphs 1-45, 69 above are re-alleged and incorporated.

120.   This count sets forth a claim for common law negligence, and is based on duties that arose during Plaintiff's detention, neglect thereof, and resulting injuries.

121.   Defendant knew or should have known that Plaintiff was within a zone of risk related to his contact with its agents/employees.

122.   Defendant owed a duty of care to Plaintiff due to Plaintiff being sufficiently restrained of his liberty and freedom to leave, and also based on

Plaintiff's medical conditions in combination with his being in the custody of Defendant.

123.   Once Plaintiff was retrained of his liberty, and because he was forced to rely on the services provided by Defendant, including determinations as to entitlement to medical services followed by the provision or failure of provision of such medical services and the assignments of bunks, he was in a foreseeable zone of risk, and a duty of care arose. Alternatively, because of the nature of the restraint and the custodial relationship between Plaintiff and Defendant, and also based on Plaintiff's medical conditions, Defendant had a special relationship with him and, consequently, a duty of care was attendant thereto.

124.   Defendant breached its duty of care to Plaintiff and/or its duties to ensure that Plaintiff received a problem bunk assignment in light of his medical needs and to ensure that Plaintiff received medical care, particularly in light of the circumstances here, specifically including Plaintiff's medical condition.

125.   The proximate cause of Plaintiff's injuries, and also for the exacerbation of Plaintiff's injuries, was Defendant's negligence set forth above, and therefore such negligence was the legal cause of Plaintiff's injuries.

126.   The common law negligence subject of this count is ordinary negligence in the performance or failure of performance of duties devolving upon Defendant, and not negligence or vicarious liability for negligence in the provision

of professional medical services. Therefore, the pertinent standard of care is that which applies to ordinary actions of non-medical professionals, rather than that which applies to medical professionals.

127.   No medical or professional expertise was required on the part of Defendant's employees in order to be aware of Plaintiff's severe medical conditions, and his need for medical access and services. Thus, Defendant's knowledge of Plaintiff's conditions and needs was obtained, in whole or in part, through non-medical employees/agents.

128.   As a direct and proximate result of the above unlawful acts and omissions of Defendant, Plaintiff sustained economic damages, including lost income, sustained emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, and is therefore entitled to compensatory damages. These damages occurred in the past, are occurring at present, and are likely to continue into the future.

### COUNT IX-HANDICAP/DISABILITY/PERCEIVED DISABILITY-BASED DISCRIMINATION (against Defendant DOC)

129.   Paragraphs 1-70 above are re-alleged and incorporated.

130.   This count sets forth a claim for discrimination based on Plaintiff's handicap, disability, and/or perceived disability, brought under 42 U.S.C. §12131, *et seq.* (ADA-Title II), under 28 C.F.R. §39.130, under 28 C.F.R. §35.130, and

under 29 U.S.C. §704 (the Rehabilitation Act). This count is pled in the alternative, and for purposes this count, Defendant's employees and agents were acting within the course and scope of their employment/agency with Defendant.

131.    The above-referenced disability anti-discrimination laws impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability.

132.    Plaintiff was disabled as defined by 42 U.S.C. § 12102, 42 U.S.C. §12131, and 28 C.F.R. §35.108, as he suffered a physical impairment that substantially limited one or more of his major life activities.

133.    Defendant is a public entity as defined by Title II of the ADA.

134.    Defendant's prisons, in which Plaintiff was incarcerated, are facilities and their operation comprise a program of service for purposes of Title II of the ADA.

135.    Plaintiff was an individual qualified to participate in or receive the benefit of Defendant's services, programs, or activities.

136.    Defendant, through its agents and employees, because of Plaintiff's handicap/disability or of its perception of Plaintiff as disabled, refused and/or challenged accommodations including without limitation the consistent assignment to a lower bunk, and otherwise harassed him on the basis of his disability/perceived disability.

137.   There was no legitimate reason for the mistreatment of Plaintiff.

138.   Plaintiff was abused because of his disabilities by Defendant's agents and employees. Plaintiff was abused when he was assigned to an upper bunk, more specifically when he was denied a lower bunk pass despite his history of seizures, which put him at high risk of serious injury if denied a lower bunk pass, and was further abused when he was denied medical treatment for injuries he suffered due to his disability, which was known to Defendant, and was then denied accommodations to prevent further injuries that could result due to his disabilities.

139.   Such abuse and denial of medical treatment and accommodations by Defendant and its agents and employees was in spite of Plaintiff's known disabilities. Such abuse constituted discrimination against individuals based on their disability in violation of the Rehabilitation Act and of Title II of the ADA.

140.   Defendant, through its agents and employees, because of Plaintiff's handicap/disability or of its perception of Plaintiff as disabled, refused and/or challenged accommodations, and otherwise harassed him on the basis of his disability/perceived disability.

141.   Defendant knew or should have known of these conditions. The adverse treatment of Plaintiff, together with the facts set forth above, were brought to the attention of Defendant and Defendant perpetuated this treatment by condoning and/or ratifying the actions and inactions affecting Plaintiff.

142.   Defendant harbored ill-motives and intent to cause disparate and discriminatory treatment of Plaintiff.

143.   Defendant is responsible for the violations of Plaintiff's rights as set forth herein because it exercised control over the adverse treatment of Plaintiff. In the alternative, Defendant failed to properly supervise its employees, thereby causing foreseeable violations of Plaintiff's rights as set forth herein.

144.   As a direct and proximate result of Defendant's actions described in part above, Plaintiff has sustained damages including but not limited to mental, nervous, and emotional injury. Plaintiff has incurred additional damages including pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and other damages. These damages have occurred in the past, are occurring at present and will likely continue into the future.

## COUNT X
### HANDICAP/DISABILITY/PERCEIVED DISABILITY-BASED DISCRIMINATION
### (against Defendant CORIZON)

145.   Paragraphs 1-45, 69, 70 above are re-alleged and incorporated.

146.   This count sets forth a claim for discrimination based on Plaintiff's handicap, disability, and/or perceived disability, brought under 42 U.S.C. §12131, *et seq*. (ADA-Title II), under 28 C.F.R. §39.130, under 28 C.F.R. §35.130, and under 29 U.S.C. §704 (the Rehabilitation Act). This count is pled in the alternative,

and for purposes of this count, Defendant's employees and agents were acting within the course and scope of their employment/agency with Defendant.

147.   The above-referenced disability anti-discrimination laws impose an affirmative duty on entities such as Defendant to create policies or procedures to prevent discrimination based on disability and/or to follow the policies of a public entity in this regard.

148.   Plaintiff was disabled as defined by 42 U.S.C. § 12102, 42 U.S.C. §12131, and 28 C.F.R. §35.108, as he suffered a physical impairment that substantially limited one or more of his major life activities.

149.   Defendant is subject to Title II of the ADA.

150.   Defendant conducts its business in prisons, in which Plaintiff was incarcerated, which are facilities and their operation comprise a program of service for purposes of Title II of the ADA.

151.   Plaintiff was an individual qualified to participate in or receive the benefit of Defendant's services, programs, or activities.

152.   Defendant, through its agents and employees, because of Plaintiff's handicap/disability or of its perception of Plaintiff as disabled, refused and/or challenged accommodations, and otherwise harassed him on the basis of his disability/perceived disability.

153.   There was no legitimate reason for the mistreatment of Plaintiff.

154.   Plaintiff was abused because of his disabilities by Defendant's agents and employees. Plaintiff was abused when he was assigned to an upper bunk, more specifically when he was denied a lower bunk pass despite his history of seizures, which put him at high risk of serious injury if denied a lower bunk pass, and was further abused when he was denied medical treatment for injuries he suffered due to his disability, which was known to Defendant, and was then denied accommodations to prevent further injuries that could result due to his disabilities.

155.   Such abuse and denial of medical treatment and accommodations by Defendant and its agents and employees was in spite of Plaintiff's known disabilities. Such abuse constituted discrimination against individuals based on their disability in violation of the Rehabilitation Act and of Title II of the ADA.

156.   Defendant, through its agents and employees, because of Plaintiff's handicap/disability or of its perception of Plaintiff as disabled, refused and/or challenged accommodations, and otherwise harassed him on the basis of his disability/perceived disability.

157.   Defendant knew or should have known of these conditions. The adverse treatment of Plaintiff, together with the facts set forth above, were brought to the attention of Defendant and Defendant perpetuated this treatment by condoning and/or ratifying the actions and inactions affecting Plaintiff.

158.   Defendant harbored ill-motives and intent to cause disparate and

discriminatory treatment of Plaintiff.

159.    Defendant is responsible for the violations of Plaintiff's rights as set forth herein because it exercised control over the adverse treatment of Plaintiff. In the alternative, Defendant failed to properly supervise its employees, thereby causing foreseeable violations of Plaintiff's rights as set forth herein.

160.    As a direct and proximate result of Defendant's actions described in part above, Plaintiff has sustained damages including but not limited to mental, nervous, and emotional injury. Plaintiff has incurred additional damages including pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and other damages. These damages have occurred in the past, are occurring at present and will likely continue into the future.

**COUNT XI**
**CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. §1983**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS-**
**CORIZON**

161.    Plaintiff re-alleges paragraphs 1-45, 69, 70 as if fully set forth herein.

162.    At all times material, Defendant Corizon had a duty under the Eighth and Fourteenth Amendments to the Constitution of the United States of America to provide adequate medical care to inmates under Defendant's control. Defendant is a person under the laws applicable to this action. Under these Amendment, Defendant had a duty not to be deliberately indifferent to the known serious medical needs of inmates in the custody of DOC.

163.   While incarcerated within a DOC facility, Plaintiff suffered from a serious medical need which required medical attention.

164.   Defendant was deliberately indifferent to Plaintiff's medical needs.

165.   Defendant Corizon was aware of Plaintiff's injuries and medical needs.

166.   Defendant was aware that Plaintiff was at substantial risk of serious harm and continued pain if he did not receive immediate treatment.

167.   Plaintiff's medical diagnosis and condition was known or knowable to Defendant all times material, as documented in the Plaintiff's records. Despite its actual or imputed knowledge of the serious risk to Plaintiff's health, the Defendant intentionally or through deliberate indifference, failed or refused to provide Plaintiff with access to the specialized medical care either ordered by physicians or requested by Plaintiff.

168.   Had Defendant ensured that Plaintiff was properly treated in a timely manner, Plaintiff's pain and injuries would have been treated.

169.   Defendant had a custom and practice of the denial of medical care and treatment of persons incarcerated in DOC facilities. They were either deliberately indifferent in the failure to adequately train their employees in the treatment of persons incarcerated in DOC facilities, was the final policy maker with respect to the care and treatment that inmates received while incarcerated and/or had a

custom and practice of denying inmates medical care and treatment.  This unconstitutional policy was the cause of the injury suffered by Plaintiff.

170.   As a direct, proximate, and foreseeable result of Defendant's deliberate indifference to Plaintiff's known serious medical needs, Plaintiff has suffered the injuries described in this complaint, including bodily injuries and resulting pain and suffering, disability, mental anguish, loss of ability to enjoy life, expenses of medical and nursing care and treatment, and other losses, including the aggravation of pre-existing conditions.  These injuries and losses are permanent and continuing, and Plaintiff will suffer such losses in the future. Plaintiff is entitled to punitive damages.

## COUNT XII
## CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. §1983
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS-
## CENTURION

171.   Plaintiff re-alleges paragraphs 1-18,46-70 as if fully set forth herein.

172.   At all times material, Defendant Corizon had a duty under the Eighth and Fourteenth Amendments to the Constitution of the United States of America to provide adequate medical care to inmates under Defendant's control. Defendant is a person under the laws applicable to this action. Under these Amendment, Defendant had a duty not to be deliberately indifferent to the known serious medical needs of inmates in the custody of DOC.

173.   While incarcerated within a DOC facility, Plaintiff suffered from a

serious medical need which required medical attention.

174.   Defendant was deliberately indifferent to Plaintiff's medical needs.

175.   Defendant was aware of Plaintiff's injuries and medical needs.

176.   Defendant was aware that Plaintiff was at substantial risk of serious harm and continued pain if he did not receive immediate treatment.

177.   Plaintiff's medical diagnosis and condition was known or knowable to Defendant all times material, as documented in the Plaintiff's records. Despite its actual or imputed knowledge of the serious risk to Plaintiff's health, the Defendant intentionally or through deliberate indifference, failed or refused to provide Plaintiff with access to the specialized medical care either ordered by physicians or requested by Plaintiff.

178.   Had Defendant ensured that Plaintiff was properly treated in a timely manner, Plaintiff's pain and injuries would have been treated.

179.   Defendant had a custom and practice of the denial of medical care and treatment of persons incarcerated in DOC facilities. They were either deliberately indifferent in the failure to adequately train their employees in the treatment of persons incarcerated in DOC facilities, was the final policy maker with respect to the care and treatment that inmates received while incarcerated and/or had a custom and practice of denying inmates medical care and treatment.  This unconstitutional policy was the cause of the injury suffered by Plaintiff.

180.    As a direct, proximate, and foreseeable result of Defendant's deliberate indifference to Plaintiff's known serious medical needs, Plaintiff has suffered the injuries described in this complaint, including bodily injuries and resulting pain and suffering, disability, mental anguish, loss of ability to enjoy life, expenses of medical and nursing care and treatment, and other losses, including the aggravation of pre-existing conditions.  These injuries and losses are permanent and continuing, and Plaintiff will suffer such losses in the future. Plaintiff is entitled to punitive damages.

## COUNT XIII-COMMON LAW SUPERVISION
### (Against Defendant CENTURION)

181.    Paragraphs 1-18, 46-69 above are re-alleged and incorporated.

182.    This count sets forth a claim for common law negligent supervision.

183.    The duties of care owed by Defendant to Plaintiff included the duty to properly supervise its employees/agents, and specifically to observe and monitor the actions, inactions, and overall performance of its employees/agents in functioning in connection with detainee supervision and medical care determination and needs for bunk assignments based on the employee's physical and/or mental health needs and/or in connection with the supervision of other employees who supervise detainees and determine medical care, to make themselves aware of their employees'/agents' professional difficulties and the fitness or unfitness of such employees/agents to act properly under the law, without

violating the rights of persons such as Plaintiff, and in the context of difficulties or unfitness to take remedial actions, including but not limited to investigation, instruction, and reassignment. Plaintiff was in a foreseeable zone of risk, and this duty of care arose.

184. On information and belief, Defendant breached its duty of care to Plaintiff by negligently failing to monitor the actions, inactions, and overall performance of its employees/agents in functioning in connection with detainee supervision, assignments of bunks to disabled inmates, and medical care provision, and/or functioning in connection with the supervision of other employees who supervise detainees and determine medical care, by its negligent failure to make itself aware of the difficulties and fitness or unfitness of such employees/agents to act properly under the law, without violating the rights of persons such as Plaintiff, and/or by its negligent failure to take remedial actions, including but not limited to investigation, instruction, and reassignment, when it was aware or should have been aware of such employees'/ agents' difficulties and unfitness, and such employees and agents then acted in connection with Plaintiff.

185. As a direct and proximate result of the unlawful acts and omissions of Defendant, set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation,

loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future. Plaintiff is also entitled to equitable/ injunctive relief under this count.

### COUNT XIV-COMMON LAW NEGLIGENCE
### (against Defendant Centurion)

186.   Paragraphs 1-18, 46-69 above are re-alleged and incorporated.

187.   This count sets forth a claim for common law negligence, and is based on duties that arose during Plaintiff's detention, neglect thereof, and resulting injuries.

188.   Defendant knew or should have known that Plaintiff was within a zone of risk related to his contact with its agents/employees.

189.   Defendant owed a duty of care to Plaintiff due to Plaintiff being sufficiently restrained of his liberty and freedom to leave, and also based on Plaintiff's medical conditions in combination with his being in the custody of Defendant.

190.   Once Plaintiff was retrained of his liberty, and because he was forced to rely on the services provided by Defendant, including determinations as to entitlement to medical services followed by the provision or failure of provision of such medical services and the assignments of bunks, he was in a foreseeable zone of risk, and a duty of care arose. Alternatively, because of the nature of the

restraint and the custodial relationship between Plaintiff and Defendant, and also based on Plaintiff's medical conditions, Defendant had a special relationship with him and, consequently, a duty of care was attendant thereto.

191.   Defendant breached its duty of care to Plaintiff and/or its duties to ensure that Plaintiff was protected from other inmates and to ensure that Plaintiff received medical care, particularly in light of the circumstances here, specifically including Plaintiff's medical condition.

192.   The proximate cause of Plaintiff's injuries, and also for the exacerbation of Plaintiff's injuries, was Defendant's negligence set forth above, and therefore such negligence was the legal cause of Plaintiff's injuries.

193.   The common law negligence subject of this count is ordinary negligence in the performance or failure of performance of duties devolving upon Defendant, and not negligence or vicarious liability for negligence in the provision of professional medical services. Therefore, the pertinent standard of care is that which applies to ordinary actions of non-medical professionals, rather than that which applies to medical professionals.

194.   No medical or professional expertise was required on the part of Defendant's employees in order to be aware of Plaintiff's severe medical conditions, and his need for medical access and services. Thus, Defendant's

knowledge of Plaintiff's conditions and needs was obtained, in whole or in part, through non-medical employees/agents.

195.   As a direct and proximate result of the above unlawful acts and omissions of Defendant, Plaintiff sustained economic damages, including lost income, sustained emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, and is therefore entitled to compensatory damages. These damages occurred in the past, are occurring at present, and are likely to continue into the future.

### COUNT VX-COMMON LAW NEGLIGENT TRAINING
### (Against Defendant CENTURION)

196.   Paragraphs 1-18, 46-69 above are re-alleged and incorporated.

197.   This count sets forth a claim for common law negligent training.

198.   The duties of care owed by Defendant to Plaintiff included the duty to properly train its employees/agents, and specifically to implement and operate training programs so as to train employees/agents in connection with the supervision of detainees and with the determination of detainees' needs for medical care, needs for bunk assignments based on the employee's physical and/or mental health needs and/or with the supervision of other officers who in turn supervise detainees and determine detainee medical care needs and bunk assignments. Plaintiff was in a foreseeable zone of risk, and this duty of care arose.

199.   On information and belief, Defendant breached its duty of care to Plaintiff by negligently implementing or operating its training programs with regard to its employees/agents involved in detainee supervision and medical care determination and regarding inmates' needs for bunk assignments based on the employee's physical and/or mental health needs, and/or involved in the supervision of other officers who in turn supervise detainees and determine medical care, and/or by delivering no training at all to such employees/agents, who then acted in connection with Plaintiff.

200.   As a direct and proximate result of the unlawful acts and omissions of Defendant, set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and are likely to continue into the future. Plaintiff is also entitled to equitable/injunctive relief under this count.

## COUNT XVI
## HANDICAP/DISABILITY/PERCEIVED
## DISABILITY-BASED DISCRIMINATION
### (against Defendant CENTURION)

201.   Paragraphs 1-18, 46-70 above are re-alleged and incorporated.

202.   This count sets forth a claim for discrimination based on Plaintiff's handicap, disability, and/or perceived disability, brought under 42 U.S.C. §12131, *et seq.* (ADA-Title II), under 28 C.F.R. §39.130, under 28 C.F.R. §35.130, and under 29 U.S.C. §704 (the Rehabilitation Act). This count is pled in the alternative, and for purposes of this count, Defendant's employees and agents were acting within the course and scope of their employment/agency with Defendant.

203.   The above-referenced disability anti-discrimination laws impose an affirmative duty on entities such as Defendant to create policies or procedures to prevent discrimination based on disability and/or to follow the policies of a public entity in this regard.

204.   Plaintiff was disabled as defined by 42 U.S.C. § 12102, 42 U.S.C. §12131, and 28 C.F.R. §35.108, as he suffered a physical impairment that substantially limited one or more of his major life activities.

205.   Defendant is subject to Title II of the ADA.

206.   Defendant conducts its business in prisons, in which Plaintiff was incarcerated, which are facilities and their operation comprise a program of service for purposes of Title II of the ADA.

207.   Plaintiff was an individual qualified to participate in or receive the benefit of Defendant's services, programs, or activities.

208.   Defendant, through its agents and employees, because of Plaintiff's handicap/disability or of its perception of Plaintiff as disabled, refused and/or challenged accommodations, and otherwise harassed him on the basis of his disability/perceived disability.

209.   There was no legitimate reason for the mistreatment of Plaintiff.

210.   Plaintiff was abused because of his disabilities by Defendant's agents and employees. Plaintiff was abused when he was assigned to an upper bunk, more specifically when he was denied a lower bunk pass despite his history of seizures, which put him at high risk of serious injury if denied a lower bunk pass, and was further abused when he was denied medical treatment for injuries he suffered due to his disability, which was known to Defendant, and was then denied accommodations to prevent further injuries that could result due to his disabilities.

211.   Such abuse and denial of medical treatment and accommodations by Defendant and its agents and employees was in spite of Plaintiff's known disabilities. Such abuse constituted discrimination against individuals based on their disability in violation of the Rehabilitation Act and of Title II of the ADA.

212.   Defendant, through its agents and employees, because of Plaintiff's handicap/disability or of its perception of Plaintiff as disabled, refused and/or challenged accommodations, and otherwise harassed him on the basis of his disability/perceived disability.

213.   Defendant knew or should have known of these conditions. The adverse treatment of Plaintiff, together with the facts set forth above, were brought to the attention of Defendant and Defendant perpetuated this treatment by condoning and/or ratifying the actions and inactions affecting Plaintiff.

214.   Defendant harbored ill-motives and intent to cause disparate and discriminatory treatment of Plaintiff.

215.   Defendant is responsible for the violations of Plaintiff's rights as set forth herein because it exercised control over the adverse treatment of Plaintiff. In the alternative, Defendant failed to properly supervise its employees, thereby causing foreseeable violations of Plaintiff's rights as set forth herein.

216.   As a direct and proximate result of Defendant's actions described in part above, Plaintiff has sustained damages including but not limited to mental, nervous, and emotional injury. Plaintiff has incurred additional damages including pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and other damages. These damages have occurred in the past, are occurring at present and will likely continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a)   that process issue and this court take jurisdiction over this cause;

(b)    that this court enter judgment against Defendants and for Plaintiff granting equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein, and providing other equitable relief to Plaintiff;

(c)    that this court enter judgment against Defendants and for Plaintiff awarding all legally-available general and compensatory damages, including damages for economic loss, to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d)    that this court enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of law enumerated herein;

(e)    that this court enter judgment against Defendants and for Plaintiff awarding Plaintiff costs and attorney's fees as allowed by law;

(f)    that this court enter judgment against Defendants and for Plaintiff awarding Plaintiff interest where appropriate; and

(g)    that this court grant such other and further relief as is just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted:


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all counsel of record by CM/ECF this 23rd day of March, 2020.

/s/ Marie A. Mattox
Marie A. Mattox